## Methodist Episcopal Church South of Louisa, Ky., et al. v. McAdams.

(Decided April 28, 1936.)

834

CLYDE L. MILLER and A. O. CARTER for appellants
STOLL, MUIR, TOWNSEND & PARK for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

John W. M. Stewart died testate, in November, 1930, a citizen and resident of Fayette county, Ky., and his will was duly probated in the Fayette county court. By the terms of his will he made the following bequests:

Item 1. To the Pine Hill Cemetery Company of Louisa, Ky., a corporation, the sum of $15,000 to be used by it in enlarging the grounds of the present cemetery, in building a fence around the same, and in acquiring and building a residence for a caretaker thereof.

Item 2. To the Ashland National Bank, as trustee, the sum of $25,000 to be by it invested and the net income therefrom to be paid over semiannually to the said Pine Hill Cemetery Company and its successors, to be used in paying the expenses of preserving, taking care of, beautifying, and protecting the cemetery; said trust to continue in perpetuity.

Item 3. To the testator's sister, Neva S. Campbell, the sum of $50,000 to be paid to her within one year, with interest at 6 per cent. per annum on such of said legacy as shall not be paid within one year from the date of the death of the testator.

Item 4. To the board of trustees of the Methodist Episcopal Church South of Louisa, Ky., the sum of $5,000 to be paid at the convenience of the testator's executors, but in any event within one year from the date of the death of the testator.

Item 5. To Miss Kate M. Fitzgerald (who for many years was stenographer or secretary to the law firm of Hager & Stewart, the latter, testator, being a member of the said law firm) $5,000 to be paid to her within one year from the death of the testator with interest at 6 per cent. per annum on such of said legacy as is not paid within that time.

Item 6. To the Ashland National Bank, as trus-

tee, the sum of $50,000 in trust to be invested by it and the net income therefrom to be paid to the testator's brother, Forest L. Stewart, in semiannual or more frequent payments, during his life and upon his death the corpus of the trust to be paid to Forest L. Stewart's daughter, Martha Mayo Stewart.

Item 7 reads as follows:

"Item Seven. It is my intention to give, devise and bequeath, and I do hereby give, devise and bequeath, and the Executors of my will shall act accordingly, so that after the payment of my debts, priority of right in payments of bequests and legacies herein given shall be in the order following, that is to say:

"Items Three and Six to be paid in full before anything shall be paid under Item One.

"Item One to be paid in full before anything shall be paid under Item Two.

"Item Two to be paid in full before anything shall be paid under Item Four.

Item Four to be paid in full before anything shall be paid under Item Five."

Item 8 is a residuary clause devising to testator's wife, Lucille Fox Stewart, the residue of the estate not specifically embraced in the above items.

Item 9 required the executors to pay all taxes on the estate so that the beneficiaries of the will may receive their legacies in full without any deduction.

By item 10 the testator nominated and appointed John F. Hager, of Ashland, Ky. (late law partner of testator), and W. S. Dudley of Lexington, Ky., as executors of his will with the proviso that in case of inability of either to act or in case one declines to act the other was given full power as executor of the will. The nominated executors accepted the trust and duly qualified as such executors and proceeded to jointly administer the estate until the death of Mr. Dudley, which occurred on the 28th day of September, 1932. Thereafter Mr. Hager alone administered the estate as the sole executor thereof.

Forest L. Stewart predeceased the testator, and

836

the entire legacy devised to him passed to his daughter, Martha Mayo Stewart.

J. J. Morris, W. H. Courtney, and John E. Buckingham were, by orders of the Fayette county court, appointed appraisers of the estate of the testator and proceeded to appraise same and filed their report and inventory thereof.

It appears that the estate consisted chiefly of stocks, bonds, and other securities, many of which were of no value. The recapitulation of the appraiser's report is as follows:

| | |
|---|---:|
| "Total Stocks | $150,926.00 |
| Total Bonds and accrued Interest | 157,856.35 |
| Total Cash in Banks | 590.94 |
| Total Miscellaneous (Int. in Hotel Site) | 1,277.00 |
| Total Life Insurance | 5,000.00 |
| Total personal property | 315,650.29 |
| Real estate | 17,500.00 |
| Grand Total | $333,150.29" |

It appears, however, that thereafter certain other funds came to the hands of the executors in the approximate sum of $12,000, showing the total value of the estate to be approximately $345,000.

The Ashland National Bank, nominated as trustee in respect of the trust declared in items 2 and 6, respectively, declined to accept or undertake execution of the trust mentioned in item 6 of the will, and Nannie W. Stewart, individually and as the duly appointed guardian of Martha Mayo Stewart, filed suit in the Fayette circuit court asking the appointment of the Second National Bank of Ashland, Ky., as trustee of the bequests designated in item 6, and the action resulted in the appointment of the said Second National Bank of Ashland as trustee instead of the nominated trustee, and it duly qualified as such. In July, 1932, Martha Mayo Stewart, unmarried, attained majority age of 21 years and duly signed and executed a writing approving and confirming the appointment of the Second National Bank of Ashland as her trustee.

The Ashland National Bank did not accept the trust respecting the legacies of $25,000 in favor of the

Pine Hill Cemetery designated in item 2 of the will, and in September, 1931, the bank closed business and thereby became without power to qualify or act as such trustee, and no trustee having been appointed or designated to act in its stead, the cemetery appears in this action in its own right and behalf. By the terms of the will the executors were authorized and empowered to sell and dispose of the assets of the testator's estate and pay all legacies in cash. The executors proceeded to and did sell and dispose of a certain portion of the estate and applied the proceeds thereof to the payment of certain debts and obligations of the testator in the sum of approximately $97,000, and in addition thereto paid to testator's sister, Neva S. Campbell, the sum of $25,000 or one-half of her legacy, and a like sum to Martha Mayo Stewart, leaving a cash balance in the hands of the executors sufficient only to pay expenses of the administration of the estate.

It appears that since the filing of the inventory of the estate, certain stocks, bonds, and perhaps other securities which were appraised as consisting of certain values, had greatly depreciated in market value, and, in fact some of them had become entirely worthless, and as a result of the depression and declining market conditions, the executors were unable to dispose of the remainder of the assets at any appreciable value or price and by reason thereof were unable to pay the preferred legacies to Neva S. Campbell and Forest L. Stewart, the latter having descended to Martha Mayo Stewart, designated in items 3 and 6 respectively, both of whom were insisting on payment of the balance of their legacies.

After the probation of the will and before the institution of this action, the testator's widow, referred to in the will as Lucille Fox Stewart, married one Raymond McAdams, and is known in this record as Lucille Fox McAdams.

On August 16, 1932, the executors filed their petition in equity in the Fayette circuit court naming all legatees parties defendant, in which they stated in substance, that they had sold and disposed of certain of the personal property of the testator's estate and that out of the funds coming to their hands they had disbursed as of August 15, 1931, a total of approximately $180,000,

this sum including payment of funeral and burial expenses, debts of decedent, notes and interest, taxes, street paving, and expenses of the administration to date, and the payment of approximately one-half each of the legacies of Neva S. Campbell and Martha Mayo Stewart, a total of $50,000 with interest on the unpaid portions of such legacies. The petition set out a detailed statement of the property disposed of and the sums realized therefor, and all expenditures made by them and a cash balance sufficient only to pay the administration of the estate.

They further alleged that they had been unsuccessful in their efforts to negotiate sale or obtain price offers for real estate, bonds, notes, or stocks, or agreement on the part of any legatee, to take the property in kind at either appraised value or upon such reduction in appraised value of bonds and dividend paying stocks as might be authorized under the provisions of section 4707, Kentucky Statutes, and, therefore, were unable to pay the balance of the preferred legacies. which they are charged and duty bound to pay in order of priority; that the remaining unpaid part of the preferred legacies with interest, amounting to $50,000 and in addition thereto remaining legacies amounting to $40,000 with accrued interest, and that a sum in excess of $100,000 is required to pay them in full; that they hold an unexpended balance of cash in reserve sufficient to pay estimated costs of administration. They stated that they were unable to proceed in further administering the estate remaining in their hands and to execute the trust to be further performed by them, without the advice, direction, and protection of orders of the court, and prayed that their trusts may be further executed and performed under the sanction and direction of the court's orders; and further prayed for such general and special relief as shall seem meet and as the circumstances of their cause require.

The Pine Hill Cemetery Company filed its answer admitting as true, as alleged in the petition, that to pay the legacies in the order of priority, a sale of assets remaining in the hands of the plaintiffs is required to provide payment thereof and assure value to specific and residuary legatees of the will. It also admitted the inability of plaintiffs because of the depressed condi-

tion of all business, to negotiate or effect a sale of the bonds, secured notes, stocks, and real estate listed in the inventory and appraisement, or obtain offers of prices therefor approximating their appraised value during and since the year 1931. It further recognized the propriety of the action of plaintiffs in invoking the aid, protection, and authority of the court in directing methods and means of enabling them to realize from unadministered assets of the estate sums sufficient to pay the legacies due and to be paid by it, and willingly submitted all matters arising or to arise in the action, affecting its interest, to be determined and protected by such orders and decrees as to the court may seem proper.

The Methodist Episcopal Church South of Louisa, Ky., filed its answer specifically admitting certain allegations of the petition, but failing to deny any, and stated that no part of its legacy had been paid, although same was due. It prayed that its rights be protected by the court and that its legacy be paid to it in due course at such time as the funds in the hands of the executors may be available for such purpose.

Other defendants filed answers admitting in substance all the allegations of the petition and offered no resistance thereto and virtually conceded the requests of the plaintiffs.

On December 9, 1932, the death of W. S. Dudley was suggested of record and it was ordered that John F. Hager, as the surviving executor, be confirmed in authority, right, and duty, as sole executor of the will of the testator. On December 10, 1932, Mr. Hager, as sole executor of the estate, filed his amended petition showing the status of his accounts as executor, leaving a balance on hand as of September 28, 1932, of $9,808.57, and certain receipts in the total of $5,917.30, making a total of $15,725.87. He further showed disbursements since filing the original petition, in the sum of $933.38, leaving a balance on hand as of November 21, 1932, of $14,792.49. He further alleged that it continued as true, as stated in the petition, that efforts continued since the filing thereof, to negotiate sale or obtain price offers for real estate, bonds, stocks, and notes, or obtain agreement on the part of any legatee to take the same in kind, at either appraised or agreed value, ex-

cept in the offer thereinafter set out, have been without success. That unpaid balance of principal of the two preferred legacies totals $48,981.50, with interest on $25,000 thereof from April 15, 1932, and on $23,981.50 thereof from July 27, 1932, making a total sum of $50,247.28. He alleged that payment in cash had been demanded by and on behalf of each of the preferred legatees, and, in addition thereto, items of administration expenses, commissions, and claims of allowance for special services in the total sum of $10,734.58; that other than cash balance, which was sufficient only to pay expenses of the administration of the estate, there were no assets of the estate convertible for payment of the preferred legacies.

It was further stated that Lucille Fox McAdams, on November 18, 1932, offered to purchase all and singular of the unadministered assets of the estate, and as consideration therefor, to pay the sum of $48,981.50, such being balance of principal due the two prior legatees, subject however, to be credited by (a) all cash thereafter coming into the hands of the executor including such amount as should thereafter be received from the settlement of a certain note, and (b) $4,500 in par value of the Olive Hill Refractories Company's bonds and accrued interest thereon amounting to $232.50, the executor to retain such cash deposit on said date amounting to $10,673.13 to be applied in payment of unpaid executorial commissions, for special services, and all costs of administering the estate, including allowance to counsel of record in the suit. He further alleged that Neva S. Campbell and the Second National Bank of Ashland, trustee of Martha Mayo Stewart, with her consent, have agreed to accept the balance of their respective principals without interest, and in final discharge of the legacies due them, conditioned upon acceptance of the foregoing offer. The plaintiff, executor, recommended acceptance of the said offer and asked grant of authority requisite to carrying same into effect. There was filed with the amended petition a schedule or accounting of the assets of the estate up to the date of the filing of it, December 10, 1932.

The Pine Hill Cemetery Company filed its answer to the amended petition alleging that the unadministered assets of the estate are reasonably and fairly worth more than $100,000, and that in its judgment the

unadministered part of the estate would bring that amount if sale is not forced. It admitted that Neva S. Campbell was insisting on the remainder of her legacy to be paid at once, but alleged that she will continue to receive 6 per cent. interest thereon, and, therefore, she cannot be disadvantaged by delay. It objected to the scheme of settlement proposed in the amended petition and prayed that the court direct the executor to continue his efforts to make private sale of the unadministered assets of the estate, and, if such should not be had, to direct the sale thereof at public outcry after such advertisement as will sufficiently notify possible purchasers of the fact of such sale.

The Methodist Episcopal Church South filed its answer in which it denied that certain bonds and other assets of the estate are without value and objected to the acceptance of the offer proposed in the amended petition and stated that it was of the opinion that before the plaintiff, executor of the will, agrees to the offer made by Lucille Fox McAdams, that the entire estate of the decedent should be offered for sale publicly after due advertisement of the same, reserving the right to reject any and all bids; but, it admitted that if the property was offered for sale at that time, it, in all probability, would have to go at a sacrifice, but expressed the opinion or belief that the settlement of the estate should be held in abeyance and the time prolonged for a sale of the property until the depression is passed or the real estate, stocks and bonds should command a better price on the market, and that in so doing no one can be injured or hurt by the delay, and thereby enable the estate to pay at least a portion of the legacies devised to it, and that the defendant "believes that the same should not be sacrificed at this time for the purpose of satisfying the wishes of those who are receiving bequests and will get paid in full" if the said offer is accepted, and requested the court's earnest consideration of the matters involved in the settlement of the estate. It prayed that the remaining assets of the estate be publicly offered for sale and that the sale thereof be delayed until such time as the court may deem it advisable when the price of property and other real estate may increase.

Thereafter, in April 1933, the court entered judgment authorizing and directing the executor to accept

the offer of Lucille Fox McAdams for the purchase of the unadministered assets of the estate, and authorized and empowered the executor to transfer same to her. On the 29th day of April, 1933, another order was entered reciting that it appearing to the court that no exceptions or objections having been filed or taken to the accounting of the executors, or the surviving executor, of the estate, the accounting and settlement was ordered approved and confirmed in respect to all matters therein set forth. Pursuant to these orders and the foregoing proceedings, the sale of the unadministered assets of the estate was consummated and same delivered to Lucille Fox McAdams upon payment of the sum aforesaid.

In April, 1935, the appellants, Pine Hill Cemetery Company and the Methodist Episcopal Church South, filed a copy of the record with this court and brought this appeal as against the defendant, Lucille Fox McAdams.

Appellants concede that the executors were empowered under the will to sell the assets of the estate of testator and convert same into cash for the payment of the legacies in order of priority as set out in the will, and to do so even without invoking the aid or advice of the court or any court proceedings therefor.

But it is insisted that when the executors resorted to court proceedings seeking the advice, authority, and aid of the chancellor to sell and dispose of the unadministered assets of the estate, they then abandoned or failed to exercise their power under the will, and that such sale and disposition of the assets of the estate were had and made solely under the judgment and authority of the court, and, therefore, it was a judicial sale for all purposes and intent, and such assets of the estate as were disposed of pursuant to such order of the court should have been publicly advertised and sold at public outcry under the provisions of section 696 of the Civil Code of Practice, and the statutes relating to judicial sales.

For a determination of this case, it is necessary to consider only the question of law indicated above.

In the case of Haggin v. Straus, Trustee, 148 Ky. 140, 146 S. W. 391, 393, 50 L. R. A. (N. S.) 642, the executor who was empowered by the will to sell the prop-

erty of the testator filed suit in the Fayette circuit court for settlement of the estate and made all the devisees parties defendant. The case was determined and the court entered an order directing the executor to sell certain real property "at public auction, under the authority and responsibilities conferred upon him by the will." Acting on this authority, the executor conveyed the property to Straus Brothers and reported the sale to the court, though no order was made confirming it.

Thereafter title to the property conveyed by the executor became involved in litigation and it was argued that the deed was invalid and did not pass title to the grantee, because by the institution of the suit by the executor for the purpose of a settlement of the estate, the executor thereby lost his power of disposition under the will and had no right thereafter to make sale except under the directions of the court; and when he reported same to the court, he should have had it confirmed, and that the failure of the court to confirm the sale so made by the executor rendered the title defective. In rejecting that argument, we said: "We are of the opinion that clause 5 of the will clothed the executor with ample power to make said sale. The chancellor evidently took the same view, because he directed the executor to sell 'under the authority and responsibilities conferred on him by the will,' so that, when he acted, it was not upon the authority conferred upon him by the judgment, but rather upon the authority given him in the will. The judgment of the chancellor was merely advisory, as it were, a construction of clause 5 of the will, and it was not necessary that the sale, when made to Straus brothers, should have been reported to the court at all; and the court, in failing to take any action thereon, was no doubt influenced by the idea that it was unnecessary. * * * The institution of a suit by him neither enlarged nor diminished the rights which he had under the will to sell this property. The judgment of the chancellor did not require that the sale should be reported to court; on the contrary it stated in plain terms that it should be made by the executor under the authority conferred upon him by the will."

In the present case we have an analogous situation. The judgment in part reads: "* * * the plaintiff, John

844

F. Hager, surviving *executor of the estate of the said John W. M. Stewart,* is now hereby advised, authorized, empowered and directed to accept the said offer of the defendant, Lucille Fox McAdams, for the purchase of the following enumerated unadministered assets of said estate, and upon payment of the amount of said offer as full consideration for the said purchase, the said plaintiff, *John F. Hager, as sole executor of said estate,* is expressly authorized, empowered and directed to execute and deliver to the said Lucille Fox McAdams all and singular such endorsements, instruments of transfer and deed or deeds of conveyance as shall vest in said Lucille Fox McAdams a good, perfect and unencumbered title. * * *'' (Our italics.)

In the Haggin Case, supra, the judgment authorized the sale of the property ''under the authority and responsibility conferred upon him (executor) by the will.'' In the present case the judgment authorizes John F. Hager to accept the offer of Lucille Fox McAdams and sell to her the undisposed of assets of the estate as the *executor of the estate of the testator.* This language indicated (as did the language used in the Haggin Case) that Mr. Hager, the executor, acted not upon the authority conferred upon him by the judgment, but upon the authority given him in the will as executor, and that the judgment of the chancellor was merely advisory. The judgment did not require the property to be advertised and sold at public sale, and, under the authority of the Haggin Case, this indicated that the chancellor recognized the right of the executor to make the sale under the power given him in the will, and, therefore, did not require him to make such sale under the provisions of the Civil Code of Practice and the Statute relating to judicial sales.

In Harding's Adm'r v. Weisiger, 109 S. W. 890, 892, 33 Ky. Law. Rep. 170, the executor who was empowered by the will to sell the real estate of the testator instituted a suit in the Boyle circuit court for the settlement of the estate. However, while the action was pending, he sold certain real estate to Weisiger, who paid a certain part of the purchase price in cash, and executed his notes for the deferred payments. He paid some of the notes and then refused to pay others upon the ground the executor was without power to make the conveyance. The executor instituted suits on

the notes and sought to enforce the lien against the real estate. One of the defenses relied on was that the executor had instituted his action in the circuit court for a settlement of the estate before the sale of the property was made by him to Weisiger, and that the action was pending and undetermined at the time the sale of the property was made, which had the effect to divest him of the right to make such sale, even if such power was conferred by the will, and that the pendency of the action to settle the estate placed the power to sell the property exclusively with the court in that action. In rejecting that contention we said:

"In our opinion, when an executor or administrator, with power under a will to sell and convey real estate, institutes an action asking the aid of a court with reference to any matter connected with the settlement of the estate, he does not, by that act, turn over to the court the exclusive charge of the whole estate, and thereby lose all power and control over the estate. By section 428, Code Civ. Prac., a representative, legatee, distributee, or creditor of a deceased person has the right to bring an action for the settlement of the estate. If the principle contended for by appellee is correct, then it would follow that, if a creditor brought an action, it would have a like effect to place the whole estate and the settlement thereof in charge of the court. The case of Mersman v. Worthington's Ex'rs, 72 S. W. 1094, 24 Ky. Law Rep. 2115, 2116, was an action instituted under section 428, Code Civ. Prac., by a creditor against the executors for a settlement of the estate. In that case the court held that a personal representative who was empowered by the will to sell the real estate of his testator might sell same while an action is pending to settle the estate, and that the purchaser would be required to take the property and comply with his contract of purchase."

It is the known rule that when dealing with wills the intention of the testator will be respected. As pointed out in Harding's Adm'r v. Weisiger, supra, if the institution of an action by the executor or other interested parties for a settlement of the estate, or by the executor for the advice and assistance of the chancellor in the discharge of his duties, were to have the

effect to divest the executor of the power given him by the will and put the power of sale of the property exclusively in the court, such would result in defeat and annulment of the wishes of the testator.

The order of the court in the present case, like those in the cases herein cited, clearly indicates that the sale of the property was to be made by Mr. Hager in his executorial capacity, not as a trustee, commissioner or other officer of the court, and so long as he was acting in his executorial capacity he was exercising the power and authority conferred upon him by the will. The order of the court was merely advisory and directory, and the sale made by the executor did not partake of the elements of a judicial sale, and it is not material that same was not advertised and sold at public outcry.

Upon both reason and authority we are constrained to the conclusion that the sale made by Mr. Hager was in his executorial capacity, and vested Lucille Fox McAdams with valid title to the property so purchased by her.

Judgment affirmed.